UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jerome Williams, #074917, | ) | |
| | ) | C/A No.: 3:08-cv-4139-GRA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Written Opinion) |
| Jon E. Ozmint, Director SCDC et al. | ) | |
| Agency; Willie L Eagleton, Warden; | ) | |
| L. T. Graham; and Contraband Officer | ) | |
| Johnson, Contraband, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the Court to review Magistrate Judge Joseph R. McCrorey's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., filed on July 26, 2010. The magistrate recommends that this Court grant all portions of Defendants' Motion for Summary Judgment except for Plaintiff's excessive force claim against Defendant Johnson in his individual capacity. For the reasons stated herein, this Court adopts the magistrate's recommendations.

### Background

Plaintiff filed this action in state court on December 3, 2008. Defendants removed this action to this Court on December 24, 2008. Defendants moved for summary judgment on September 24, 2009, alleging there was no issue of material fact and that summary judgment should be granted as to all of Plaintiff's claims:

cruel and unusual living conditions, violation of due process; deprivation of visitation rights, access to the courts, and access to medical care; and use of excessive force. In his July 26, 2010, Report and Recommendation, the magistrate recommended granting Defendants' motion in part and denying Defendants' motion in part. Defendants filed objections to the report on August 12, 2010, and Plaintiff filed objections to the report on August 18, 2010.

## Standard of Review

Plaintiff brings this claim *pro se.* This Court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). However, a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985).

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made,

and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

In order for objections to be considered by a United States District Judge, the objections must specifically identify the portions of the Report and Recommendation to which the party objects and the basis for the objections. Fed. R. Civ. P. 72(b); *see Wright v. Collins*, 766 F.2d 841, 845–47 nn.1–3 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 n.4 (4th Cir. 1984). "Courts have . . . held *de novo* review to be unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Furthermore, in the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

## Discussion

The Court first reiterates that it may only consider non-conclusory objections to the Report and Recommendation that direct this Court to a specific error.

**A.      Plaintiff's Objections**

Plaintiff has made the following specific objections to the magistrate's report: that the magistrate improperly weighed credibility and evidence, that the magistrate improperly denied Plaintiff's motions to amend and compel discovery, that Plaintiff's conditions of confinement claim should survive because Fourth Circuit precedent dictates that his alleged facts are sufficient to survive summary judgment, that the magistrate improperly concluded that prisoners do not have affirmative visitation rights, that Plaintiff's confinement in a special management unit without due process violated his liberty interest in his right to parole, and that the magistrate's conclusion is incorrect as to Plaintiff's exhaustion of his administrative remedies.

**I. Summary Judgment Standard**

Plaintiff asserts that Defendants have provided the Court with false or misleading documents and suggests that the magistrate's conclusions are improperly based on genuine issues of material fact.  (*See* Pl.'s Objections to R & R 2–3, ECF No. 88.)

Summary judgment is appropriate where the admissible evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Williams v. Staples, Inc.* 372 F.3d 662, 667 (4th Cir. 2004) (citing Fed. R. Civ. P. 56(c)).  The Court must view the facts in the light most favorable to the party opposing summary judgment, and it may not make credibility

determinations or weigh the evidence. *Id.* (citing *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)). However, an issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "Indeed, to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial." *Hill v. O'Brien*, No. 09-6823, 2010 WL 2748807, at *2 (4th Cir. July 12, 2010) (citing Fed.R.Civ.P. 56(e)(2); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). Federal Rule of Civil Procedure 56(e)(2) states that "[w[hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [the] rule—set out specific facts showing a genuine issue for trial."

Plaintiff argues that there are a number of disputed material facts and that the magistrate weighed evidence and credibility, adopting Defendants' version of the facts and rejecting Plaintiffs' contradictory evidence. However, this Court need not address Plaintiff's objections, as they concern immaterial issues of fact. As discussed below, even under Plaintiff's version of the facts, Defendants are still entitled to summary judgment as to all claims except the excessive force claim. Accordingly, Plaintiff's objection is without merit.

## II. Denial of Motions to Amend Complaint and Compel Discovery

Plaintiff argues that he cannot fully resist summary judgment because the Defendants have failed to comply with his discovery requests and because the magistrate improperly denied his motions to amend his complaint.[1] Plaintiff filed three motions to compel discovery.[2] (*See* ECF Nos. 8, 50, and 71.) The magistrate granted in part and denied in part the first motion to compel and denied the two other motions. Plaintiff did not file a timely objection to the District Court as to any of these three orders.[3] Plaintiff also filed four motions seeking to amend his Complaint.[4] (*See* ECF Nos. 13, 16, 43, and 78.) The magistrate denied each motion. Plaintiff did not file a timely objection to the District Court as to the first

---

[1]    Plaintiff asserts this alleged error throughout his Objection. (*See* Pl.'s Objection 1, 2, 4, 9, 16, 17.) Accordingly, this section of the opinion addresses Plaintiff's Excessive Force objection, (Pl.'s Objection 9), Supervisory Liability objection (Pl.'s Objection 16), and Qualified Immunity objection (Pl.'s Objection 16–17).

[2]    One of the three motions was actually labeled "Motion to Amend Complaint" (Mot. to Amend Compl., June 17, 2009, ECF No. 50), but the magistrate properly analyzed it as a motion to compel (Order Den. Mot. to Compel, Sept. 11, 2009, ECF No. 64).

[3]    Federal Rule of Civil Procedure 72(a) requires a party to file objections regarding "non dispositive" pretrial matters with the District Court "within 14 days after being served with a copy [of the order the party wishes to challenge]." Fed. R. Civ. P. 72(a).

[4]    As noted in Footnote 2, Plaintiff filed a fifth motion entitled "Motion to Amend Complaint" but the magistrate found it was actually a motion to compel.

three orders.  The Court cannot review any order of the magistrate to which

Plaintiff did not timely object;[5] therefore, only the last order denying Plaintiff's

Motion to Amend is subject to review.[6]

In analyzing an objection under Rule 72(a), this Court will "modify or set aside

any part of the order that is *clearly erroneous* or is contrary to law."  Fed. R. Civ.

P. 72(a)(emphasis added).  After reviewing the Plaintiff's last motion to amend, the

---

[5]    If a party fails to make a timely objection to "non dispositive" pretrial orders, the "party may not assign as error a defect in the order." Fed. R. Civ. P. 72(a); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) (holding that the failure to timely object to a magistrate judge's order on a non-dispositive matter operates as a waiver of any further judicial review under Rule 72(a)); *Nevin v. Freedman*, No. 98-2619, 1999 WL 1267351, at *3 n* (4th Cir. 1999) (unpublished) ("[A] party who fails to comply with Rule 72(a) waives his right to appeal a magistrate's order.").  This waiver applies even though the orders in question did not contain explicit waiver language warning the Plaintiff that he waived all objections unless he objected in fourteen days. *See Caidor*, 517 F.3d at 605 (noting the difference in treatment between Rule 72(a) and 72(b) and holding that "a *pro se* litigant who fails to object timely . . . on a non-dispositive matter waives the right to appellate review . . . even absent express notice from the magistrate judge that failure to object within [fourteen] days will preclude appellate review").

[6]    Even Plaintiff's remaining objection is untimely.  In his Objection, Plaintiff objects generally to the magistrate's denials of his motions to amend. However, Plaintiff filed the Objection twenty-two (22) days after the magistrate filed the final order denying Plaintiff's last Motion to Amend.  (*See* Order Den. Mot. to Amend/Correct, July 26, 2010, ECF No. 79; Mot. to Amend/Correct, June 29, 2010, ECF No. 78.)  While Plaintiff did file a timely Motion requesting an extension of time in which to file objections, that Motion only requested additional time to file objections *to the Report and Recommendation*, which was issued on the same day as the final Order denying the Motion to Amend/Correct, and did not request additional time to file an objection to the order denying the Plaintiff's last Motion to Amend/Correct.  (*See* Mot. For Extension of Time, Aug. 3, 2010, ECF No. 83.)  Regardless, in an abundance of caution, and with due regard for the fact that Plaintiff is proceeding *pro se*, the Court will review the magistrate's order of July 26, 2010, denying leave to amend.

Magistrate's Order denying that motion, and Plaintiff's objections to that denial, this Court finds that the magistrate's Order was not clearly erroneous nor contrary to law. Plaintiff's final Motion to Amend was filed more than one year after the end of discovery and close to nine months after Defendants filed for summary judgment. Considering the prejudicial impact this delay would have had on the Defendants and the fact that Plaintiff failed to attach a proposed amended complaint to his motion despite being instructed to do so in two prior orders (*see* Ord. Den. Mot. to Amend/Correct, May 13, 2009, ECF No. 41; Ord. Den. Mot. to Amend/Correct, Sept. 11, 2009, ECF No. 64), the magistrate did not commit clear error when he denied Plaintiff's Motion to Amend dated June 29, 2010. Therefore, Plaintiff's objection to the magistrate's July 2010 Order denying leave to amend is overruled.

### III. Conditions of Confinement

Plaintiff's objections regarding his conditions of confinement claim rely heavily on a series of facts that are not subject to review by this Court. Plaintiff claims that while he was in the "dry cell" for 72 hours, he did not have a mattress[7] or clothes; he was not provided with any food or water; and his cell was "so cold as to [cause

---

[7] While Plaintiff's unsworn Complaint states that he was "placed in the cell . . . for a period of (72) [sic] hours *without* a mattress, *blanket, sheets* or anything," (Compl. 1, ECF No. 1-1 (emphasis added)), his sworn affidavit is silent as to whether he was given blankets or sheets during his 72 hour confinement in the dry cell, (Compl., Aff., ECF No. 1-1). The Plaintiff did respond to Defendants' Summary Judgment Motion, and he has not added any additional sworn statements or evidence to the record supporting his allegation of not having any blankets or sheets while in the dry cell.

him] to catch a cold or flu." (Pl.'s Objections 9–14, ECF No. 88.) However, Plaintiff did not state that he had been deprived of food and water for 72 hours in *any* of his Inmate Grievance Forms.

### a. Deprivation of Food and Water

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement "allows prison officials an opportunity to resolve disputes . . . before being haled into court[,]" potentially reduces the number of inmate suits, and improves the quality of the suits that are filed. *Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). To "properly exhaust administrative remedies[,] prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* When mixed claims—some of which were exhausted by the prisoner and some of which were

not—are before a court, the court is required to proceed only with the claims that were exhausted. *Id.* at 221.

The South Carolina Department of Corrections' (SCDC) Inmate Grievance System ("GA-01.12")[8] instructs prisoners that the "grievance form[s] should contain . . . a brief statement of the circumstances of the grievance . . . ; [as well as statements as to] why the grievant believes s/he is entitled to relief." GA-01.12 ¶13.1. Additionally, prisoners are warned that they "will only be allowed to submit one grievance per incident or circumstance." *Id.* An inmate is limited to the space on Form 10-5, Step 1, and "one additional one sided page" to list his grievances. *Id.*

Plaintiff's grievance forms did not "allow[] prison officials an opportunity to resolve disputes," *Bock*, 549 U.S. at 204 (citing *Woodford*, 548 U.S. at 94–95), about being deprived of food and water for 72 hours. Despite having an additional half of a page left in which to outline these allegations, despite knowing that he would only be allowed to "submit one grievance per incident or circumstance," GA-01.12 ¶13.1, and despite discussing his 72-hour confinement throughout the grievance, Plaintiff failed to mention these facts. The Court is not suggesting that Plaintiff's allegations are false; instead, it holds only that these claims surrounding Plaintiff's confinement conditions were not alleged in any of his grievance forms and

---

[8]     The Court takes judicial notice of the SCDC grievance process, specifically SCDC Policy GA-01.12 (Jan. 1, 2006 issue).

were therefore not exhausted prior to filing suit, as required by the PLRA.

### b. Excessive Cold

The Court is, therefore, limited to analyzing the conditions of confinement claim as to only those facts that have been exhausted by the Plaintiff: being kept in a "freezing" cell without clothes (except for underwear) or a mattress for 72 hours. (Complaint, Aff. 1–2, ECF No. 1-1.) Plaintiff claims that his exposure to the cold temperature in the cell without the protection of clothes caused him discomfort and caused him to "catch a cold or flu." (*Id.*; Pl.'s Obj. 12, ECF No. 88.)

Plaintiff argues that his claim should survive summary judgment because there is precedent holding that being kept in a cold cell without clothes or a blanket is a "serious deprivation of a basic human need." In support of his contention, Plaintiff cites *McCray v. Burrell*, 516 F.2d 357, 365–68 (4th Cir. 1975) (en banc), *cert. dismissed*, 426 U.S. 471 (1976), and *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir. 1991). This Court finds that these cases are not controlling.

The pertinent part of *McCray* involved an inmate who, on two separate occasions, was confined to a mental observation cell for about 48 hours. *McCray*, 516 F.2d at 360. The prisoner was confined to the mental observation cell because guards believed he was mentally unstable and at risk of harming himself. *Id.* at 366. The *McCray* court analyzed the Eighth Amendment claims using two "tests." *Id.* at 368. The first test required the court to determine whether "the conditions of punishment [were] sufficiently 'shocking' that they amount[ed] to 'cruel and

unusual' punishment," and the second test required the court to ask if "the punishment constitute[d] some rational means to reach a permissible end." *Id.* at 368 n.3.

Sitting en banc, the Fourth Circuit held that McCray's first claim about his conditions of confinement did not "per se amount up to a denial of his rights under the [E]ighth [A]mendment." *Id.* at 369. The first claim involved a 48 hour stay in a cell that did contain a toilet and a sink, but where McCray was deprived of "essential articles of hygiene," heat, clothes, and *blankets* and was only given a "deteriorated mattress" to rest upon. *Id.* at 368 (emphasis added). The defendant claimed that at one point it was so cold in the cell that he"tore open the mattress, which was old and deteriorated, and dug a channel down in the cotton so that he could sleep nestled in the mattress." *Id.* at 366. The record did not disclose the temperature in the defendant's cell. *Id.* The court held that, although not a per se violation, the first incident did violate the plaintiff's rights because the guards had not contacted a psychologist or psychiatrist within 24 hours of putting the him in the observation cell. *See Baird*, 926 F.2d at 1065 ("The [*McCray*] court held that in the case of an ordinary prisoner, these conditions were violative of the Eight Amendment; the only justification would be such mental derangement on the part of the inmate that self-harm was a real danger, in which case immediate contact with a psychologist/psychiatrist was required."); *Del Raine v. Williford*, 32 F.3d

1024, 1033 (7th Cir. 1994) (citing *Baird*'s interpretation of *McCray* favorably) (internal citations omitted).

However, the court held that McCray's second claim did amount to a per se violation of the Eighth Amendment. In the second claim, McCray was held naked in a mental observation cell for 48 hours "*without blanket* or mattress and with nowhere to sit, lie or lean except against bare concrete or bare tile . . . [with] no sink or running water; his only toilet . . . a hole in the floor, the cover of which [i]s encrusted with human excrement." *Id.* at 360, 369 (emphasis added). The court held that these conditions amounted to a "per se violation of the [E]ighth [A]mendment." *Id.* at 369.

Similarly, in *Baird*, the Eleventh Circuit held that the plaintiff was "entitled to have the trier of fact determine whether the conditions of his administrative confinement, principally with regard to cell temperature and the provision of hygiene items, violated the minimal standards required by the Eighth Amendment." 926 F.2d at 1066. In *Baird*, the plaintiff claimed that he had been confined "in a cold cell with no clothes except undershorts and with a plastic covered mattress *without bedding*; filth on the cell's floors and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste, and linen; and the earlier occupancy of the cell by an inmate afflicted with an HIV virus." *Id.* at 1063 (emphasis added). The Eleventh Circuit cited Second, Fourth, Seventh, and Eighth Circuit case law to support its assertion that

"[o]ther circuits have for some time recognized the temperature factor in assessing conditions of confinement. *Id.* at 1064; *see also Lewis v. Lane*, 816 F.2d 1165, 1166, 1171 n.10 (7th Cir. 1987) (setting aside summary judgment where prisoners alleged heat was maintained at an unreasonably low temperature during winter months and that the lack of heat "produce[d] physical discomfort"); *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981) (emphasis added) (affirming a finding of cruel and unusual punishment where inmate was clothed in undershorts, was *provided only a mattress for bedding*, and was so cold, "he huddled in the corner of his cell to stay warm"); *Kimbrough v. O'Neil*, 523 F.2d 1057 (7th Cir. 1975) (emphasis added) (reversing dismissal of an inmate's complaint where inmate alleged he had been placed in solitary confinement for three days *without blankets* or a mattress and without articles of personal hygiene) *Wright v. McMann*, 460 F.2d 126, 129 (2d Cir. 1972) (emphasis added) (affirming on the merits a finding of cruel and unusual punishment where an inmate had been confined for eleven days naked, without soap, towels, toilet paper, or *bedding* when the temperature was "sufficiently cold to cause extreme discomfort").

However, as the Eleventh Circuit acknowledged in *Chandler v. Crosby*, 379 F.3d 1278 (2004), the *Baird* court, and likewise the *McCray* court, "did not have the benefit of the Supreme Court's ruling in *Wilson*, *Hudson*, *Helling*, or *Farmer*, [and] [i]t was in these cases that the Court refined the Eighth Amendment framework that governs our present cases." 379 F.3d at 1296. Three months

after the Eleventh Circuit decided *Baird*, and sixteen years after the Fourth Circuit decided *McCray*, the Supreme Court "delineated the objective and subjective components of Eighth Amendment claims" in *Wilson v. Seiter*, 501 U.S. 294 (1991). To make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must satisfy an objective component, that the deprivation was sufficiently serious, and a subjective component, that the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298. Additionally, in *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court further defined the proper analysis for courts when it held that to state a cause of action under the Eighth Amendment, an inmate must allege that prison officials "have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." 509 U.S. at 35.

The *McCray* court did not delineate a subjective component as outlined in *Wilson*, but it did require the plaintiff to establish that the conditions were sufficiently shocking, thereby satisfying the objective component of the *Wilson* test. Like the plaintiffs in *McCray* and *Baird*, Plaintiff alleges that he was put in a cold cell without a sink, a toilet, a mattress, or clothes. Plaintiff claims that he was placed in the cell for 72 hours with no clothes "except [his] underwear and that "the air conditioning unit was turned on full blast." (Compl., Aff. 1–2, ECF No. 1-1.) He claims it "had to be at least []30 degrees[]," (*id.* at 2) in the cell, and that he "got sick [and] caught the flu because it was so cold (*id.*)."

Defendants respond with evidence showing that they provided Plaintiff with a mattress, sheets, and a blanket.  (*See* Defs.' Mot. S. J. Ex. 4, Aff. of Lt. Graham ¶¶ 8, 9, ECF No. 67-4; Ex. 5, Aff. of Brenda Dash-Fraser ¶¶ 3, 4, ECF No. 67.)  And, like *McCray*, prison officials placed Plaintiff in the dry cell out of concern for Plaintiff and the prison population after they witnessed Plaintiff putting what looked like contraband in his mouth during a strip search. (*See* Defs.'s Mot. S. J. Ex. 3, Aff. of Sgt. Johnson ¶¶ 8–10, ECF No. 67-3; Ex. 6, Incident Report, ECF No. 67-6.)

Plaintiff disputes Defendants' claims that he was given a mattress, sheets, and clothing (Pl.'s Obj. 10–11, ECF No. 88); however, Plaintiff cannot "rely merely on allegation[s] or denials in [his] own pleadings; rather [his] response [to Defendant's Summary Judgment Motion] must—by affidavits . . . —set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2).  Plaintiff, in his unsworn Complaint, did allege that he was "placed in the cell . . . for a period of (72) [sic] hours *without* a mattress, *blanket, sheets* or anything," (Compl. 1, ECF No. 1-1 (emphasis added)); however, his sworn affidavit is silent as to whether he was given blankets or sheets during his 72-hour confinement in the dry cell, (Compl., Aff., ECF No. 1-1).  Additionally, Plaintiff did not respond to Defendants' Summary Judgment Motion, and he has not added any additional sworn statements or evidence to the record disputing Defendant's evidence.

Therefore, taking all of the facts Plaintiff asserted in his Affidavit as true, Plaintiff is alleging that his Eighth Amendment rights were violated because Defendants placed in him a cell with only undershorts, sheets, and blankets as protection from the cold air conditioning. This allegation does not satisfy the requirement that defendants' conduct be "sufficiently serious." *McCray* and *Baird* both involved facts in which the plaintiffs were exposed to harsh conditions in cold cells and not given *any* bedding. Plaintiff's allegations also do not rise to the same level as other cases involving conditions of confinement claims alleging exposure to the cold, most of which involved cold conditions combined with lack of clothing *and* a lack of blankets or sheets. *See*, *e.g.*, *Murphy v. Walker*, 51 F.3d 714, 720–21 (7th Cir. 1995) (emphasis added) (alleging unheated cell and *no blankets* or clothing for a 1 1/2 weeks); *Del Raine v. Williford*, 32 F.3d at 1036 (emphasis added) (involving prisoner housed in cell with broken windows in which temperature was near outdoor temperature including a period of two days where *wind chills were from -40 to -50 degrees Fahrenheit*); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056–61 (7th Cir. 1991) (emphasis added) (finding clear Eighth Amendment violation where conditions included broken cell windows, *below freezing temperatures* inside the cell, *no winter clothing, lack of extra blankets*, and a malfunctioning heating system over period of four days in which *temperature fell to -22 degrees Fahrenheit and a windchill of -80 degrees Fahrenheit*); *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981) (emphasis added) (affirming a finding

of cruel and unusual punishment where inmate was clothed in undershorts, was *provided only a mattress for bedding*, and was so cold ,"he huddled in the corner of his cell to stay warm"); *Kimbrough*, 523 F.2d at 1057 (emphasis added) (reversing dismissal of an inmate's complaint where inmate alleged he had been placed in solitary confinement for three days *without blankets* or a mattress and without articles of personal hygiene); *Wright v. McMann*, 460 F.2d 126, 129 (2d Cir. 1972) (emphasis added) (affirming on the merits a finding of cruel and unusual punishment where an inmate had been confined for eleven days naked, without soap, towels, toilet paper, or *bedding* when the temperature was "sufficiently cold to cause extreme discomfort").

These cases show that mere exposure to cold air, when the inmate has the protection of clothes or blankets, is not sufficient to satisfy the objective component of the Eighth Amendment inquiry. Thus, this Court holds that Plaintiff has not alleged facts that satisfy the objective component of the Eighth Amendment inquiry, and that, contrary to Plaintiff's assertion, *McCray* and *Baird* do not mandate a different holding.

Additionally, even if Plaintiff's claims objectively were sufficiently serious, he has not established that Defendants acted with deliberate indifference. Notes made by the prison guards observing Plaintiff in the dry cell show that, at different points in the confinement, guards gave Plaintiff a pair of socks (within the first 19 hours of being placed in the dry cell), a jumpsuit (within 41 hours), and a t-shirt (within

41 hours).  (Defs.' Sum. J. Mot., Ex. 6 pp. 3–5, ECF No. 67-6.)  Those same notes

show that Defendants gave Plaintiff a mattress at the same time they gave him the

t-shirt, approximately 41 hours after they had placed him in the dry cell.  (*Id.* at 5.)

Plaintiff's medical records[9] show that prison guards allowed  medical personnel to

check Plaintiff four times during his confinement:  medical personnel checked

Plaintiff's temperature approximately eight hours after he was placed in the dry cell

(Defs.'s Sum J. Mot., Ex. 5 p. 9, ECF No. 67-5);[10] medical personnel observed that

the temperature of the area was "quite normal for the season" and was "warm,"

approximately nine and a half hours after Plaintiff was placed in the dry cell (*id.* at

9); and medical personnel even touched Plaintiff's skin, noting that his "skin [was]

warm and dry" during their visit approximately ten hours after he was placed in the

dry cell and again at a visit approximately 24 hours later (*id.*).  Approximately 35

hours after Plaintiff was placed in the dry cell, medical staff made a notation in their

records that "inmate . . . has clothes now," and 43 hours after Plaintiff was placed

in the dry cell, medical staff noted that he was sitting "on what appear[] to be

sheets."  (*Id.*)

---

[9]    Plaintiff also makes an objection to the medical records being part of the
       record, asserting that the records are hearsay.  (Pl.'s Objection 2, ECF No. 88.)
       The Court finds that the records are properly admissible as an exception to
       hearsay because they are records of regularly conducted activity.  Fed. R. Evid.
       803(6); *see also Sumpter v. Ham*, No. 99-7068, 2000 WL 243968 *1 (4th
       Cir. 2000).

[10]   For a more legible copy of these medical records, refer to ECF No. 55-1 pp.
       12–14.

However, those medical records also show that Plaintiff complained of the cell being "chilly" and that at one point he resorted to "jumping in [the] cell like a frog" and saying that he was doing so because he was "'trying to stay warm.'" (*Id.*) Plaintiff also urges the Court to recognize that the medical personnel's opinion that it was warm in the area does not mean that it was warm in the cell for someone without clothes and with the air conditioning running at full blast.   (Pl.'s Obj. 13, ECF No. 88.)

Based on the evidence before the Court, Defendants were not "deliberately indifferent" to Plaintiff's conditions in the dry cell.  Defendants provided Plaintiff with clothing at different points throughout the 72 hours and ensured that he was monitored by medical personnel as soon as 8 hours into his stint in the dry cell. Additionally, there is no evidence to dispute Defendants' sworn statements that they provided Plaintiff with sheets and blankets while he was in the dry cell. Because there is no genuine issue of fact as to whether Plaintiff's conditions were sufficiently serious and as to whether Defendants were deliberately indifferent to prison conditions, the Court grants Defendants' summary judgment motion as to Plaintiff's conditions of confinement claim.

### IV. Due Process: Visitation and SMU/Holding Cell

Plaintiff objects to the magistrate's conclusions that prisoners do not have an affirmative constitutional right to visitation and that Plaintiff's placement in the

Special Management Unit (SMU) without a pre-detention hearing did not violate his due process rights. Additionally, Plaintiff argues, for the first time, that he possesses a liberty and property interest in "ensuring that his prison file contains accurate information" because his placement in SMU will "inevitably affect his suitability for release on parole." (Pl.'s Objection 8, ECF No. 88.)

Because both claims assert procedural due process claims, this Court examines the claims in "two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State," *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents v. Roth*, 408 U.S. 564, 571 (1972)); "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient," *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983) *abrogated in part by Sandin v. Conner*, 515 U.S. 472, 484 n.5 (1995)). In analyzing due process claims, federal courts should not assume the role of superwardens of state penal institutions. *See Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

**(1) Visitation**

Plaintiff objects to the magistrate's conclusion that prisoners do not have an affirmative constitutional right to visitation. Plaintiff states that "if there was no such right, the United States Supreme Court would have held that no such right exists, as opposed to holding that the prison could limit that right." (Pl.'s Objection 14, ECF No. 88.) This Court adopts the magistrate's interpretation of existing case law—prisoners do not have an affirmative constitutional right in visitation. *See White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) ("This court concludes that there is no constitutional right to prison visitation."), *aff'd*, 588 F.2d 913 (4th Cir. 1978); *Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002) (holding that plaintiff's due process rights were not violated when his visitation rights were taken away without a hearing because "loss of visitation privileges [are] within the ordinary incidents of confinement" and "[o]nly sanctions that impose atypical and significant hardships . . . in relation to the ordinary restraints and incidents of prison life implicate the Due Process Clause"); (*Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (inmate "has no constitutional right to visitation privileges"); *Flanagan v. Shively*, 783 F. Supp. 922, 934 (M.D. Pa. 1992) ("Inmates have no constitutional right to visitation. Visitation is a privilege subject to revocation at the discretion of the Warden when necessary to ensure security and maintain order in the institution. Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion."). Therefore, Plaintiff's objection is overruled.

## (2) SMU

Plaintiff's objections regarding his placement in the SMU address the second procedural due process inquiry, whether the procedures were constitutionally sufficient, but fail to provide any authority showing he has a liberty interest in his particular security classification. Plaintiff now asserts that he has a liberty interest in having the allegation removed from his file in order to enable his possible release on parole. However, "[i]n the absence of some entitlement, a fear or hope about a future discretionary decision is too speculative to give [Plaintiff] a liberty interest. 'There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'" *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979)). Further, there is no state-created liberty interest in the decision to grant or deny parole. *See Sullivan v. S.C. Dep't of Corr.*, 355 S.C. 437, 443, 586 S.E.2d 124, 127 n.4 (S.C. 2003) ("[A]n inmate has the right of review by the [ALC] after the final decision that he is ineligible for parole, but . . . a parole-eligible inmate does not have the same right of review after the decision denying parole . . . . This distinction stems from the act that parole is a privilege, not a right."); *James v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 377 S.C. 564, 567, 660 S.E.2d 288, 290 (S.C. Ct. App. 2008). Therefore, Plaintiff has no liberty interest in the possibility that this incident may affect his parole. Most importantly, without any

indication that a hearing to establish his eligibility for parole has been denied, Plaintiff's alleged harm is purely speculative and, therefore, not ripe for review.

## V. Exhaustion of Administrative Remedies

Plaintiff objects to the magistrate's conclusion that he did not exhaust two out of three of his grievances. The Court finds no reason to address this objection. The magistrate analyzed the substance of the remaining claims, Medical/Dental and Access to the Courts, in the Report and Recommendation, and found them to be without merit. Upon review, the Court agrees with the magistrate's analysis. Additionally, this Court has analyzed the Conditions of Confinement claim above. Therefore, the Plaintiff has suffered no injury from any alleged error by the magistrate.

## B. Defendants' Objections

Defendants cite several Second Circuit cases to support their assertion that the Court should take Plaintiff's credibility into account and thereby discount Plaintiff's claim that he was "slammed . . . face first into the back wall of the holding cell[,]" (Compl., Aff. 2, ECF No. 1-1). Consequently, according to Defendants' Objection, the Court should grant them summary judgment on the Excessive Force claim because without those facts the Plaintiff's allegations fail to state a claim.[11]

---

[11]    Because slamming someone into a wall face first while that person is in handcuffs would "violate clearly established statutory and constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), Defendant Johnson's qualified immunity defense also

In the cases cited by Defendants, testimony was "'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in [the] complaint," *Jeffreys v. New York*, 426 F.3d 549, 551 (2d Cir. 2005) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003)). In *Jeffreys*, the plaintiff alleged that police officers had hit him over the head with a flashlight and thrown him out of a three-story window. *Id.* In upholding the district court's grant of summary judgment for the defendants, the Second Circuit relied on the following facts: the plaintiff had stated three different times that he had *jumped* out a three-story window while trying to escape; there was no evidence, according to a medical doctor's examination of the plaintiff's medical records, that the plaintiff had "'suffered a blow to the head with a hard round object such as a flashlight [;]'" and the plaintiff did not make his first public statement as to this alleged mistreatment until nine months after the incident. *Id.* (internal quotations omitted) (quoting *Rossi*, 275 F. Supp. 2d at 470). The second case Defendants rely on, *Shabazz v. Pico*, 994 F. Supp. 460 (S.D.N.Y. 1998), consists of similar facts. In *Shabazz*, the court found that the plaintiff had contradicted himself several times as to the extent of his injuries and as to the location of his alleged attack by prison officials.

---

relies on the Court discounting Plaintiff's claim that Defendant Johnson slammed him into the wall.

Defendants point out that medical staff did not find any injuries on Plaintiff and that Plaintiff did not make any allegations of the alleged incident to medical staff. Defendants also note that medical staff found Plaintiff joking with prison guards within two days of his alleged attack. These facts, however, fail to persuade the Court that the Plaintiff's testimony is "'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint," *Jeffreys*, 426 F.3d at 551 (quoting *Rossi*, 275 F. Supp. 2d at 475). Unlike the plaintiff in *Jeffreys* and *Shabazz*, Plaintiff has remained consistent as to his allegations against Defendant Johnson, (*compare* Defs.' Sum. J. Mot., Ex. 2 pp. 6, 9, ECF No. 67-2 ("I was hand cuffed behind my back as we entered the holding cell . . . Officer Johnson slammed me face first into the back wall of the holding cell causing me severe facial pain and knocking a tooth loose on the upper left" side) *with* Compl., Aff. 2, ECF No. 1-1 ("I was handcuffed behind my back. 'I was not resisting,' [sic] upon entering the holding cell . . . Officer Johnson 'jump [sic] on me,' and slammed me face first into the back wall of the holding cell causing me severe facial pain, and knocking a tooth loose on the upper left front.")); there is at least some proof of the injuries of which Plaintiff complains (*see id.* at Ex. 5 p. 8, ECF No. 67-5 (noting dental work Plaintiff required within three months of incident); and Plaintiff publicly made his allegations approximately seven days after the incident.[12] Because the

---

[12] Plaintiff was confined to the dry cell for three of those seven days.

Court finds that this is not one of those "rare circumstance[s] where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," *Jeffreys*, 426 F.3d at 554, and because it is improper for a court to grant summary judgment where there are genuine issues of material fact, see Fed. R. Civ. P. 56(c), this Court adopts the magistrate's conclusion that Defendant Johnson is not entitled to summary judgment as to Plaintiff's excessive force claim.

In conclusion, the Court finds no merit in any of the objections of Plaintiff or Defendants and, therefore, adopts the Report and Recommendation in its entirety. Thus, this Court permits Plaintiff the right to have a jury hear the facts and render a decision in accordance with the law as to Plaintiff's excessive force claim and grants summary judgment for Defendants as to all other claims. Moreover, because Plaintiff has failed to set forth any specific "supplemental state law claims," this Court dismisses all unspecified state law claims without prejudice, pursuant to 28 U.S.C. § 1367(c).

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendants' motion for summary judgment is **DENIED in part**, as to Plaintiff's excessive force claim against Defendant Johnson in his individual capacity;

(2) Defendants' motion for summary judgment is **GRANTED in part**, as to all of Plaintiff's claims against Defendant Johnston in his official capacity; and

(3) Defendants' motion for summary judgment is **GRANTED in part**, as to all of Plaintiff's claims against Defendants Ozmint, Eagleton, and Graham.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

September 23, 2010
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiff has the right to appeal this Order within thirty (30) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**